964 So.2d 732 (2007)
Ernesto MULLER, Appellant,
v.
Melonie R. MULLER, Appellee.
No. 3D06-2700.
District Court of Appeal of Florida, Third District.
August 1, 2007.
Rehearing and Rehearing Denied October 11, 2007.
*733 Jesus O. Cervantes, for appellant.
Lisa S. Walsh, Miami, for appellee.
Before RAMIREZ, SHEPHERD, and CORTIÑAS, JJ.
Rehearing and Rehearing En Banc Denied October 11, 2007.
CORTIÑAS, Judge.
Ernesto Muller (the "Father") appeals from a final judgment of dissolution of marriage which granted Melonie Muller's (the "Mother") petition to relocate to Grand Junction, Colorado with their minor child. We reverse.
The parties were married in Grand Junction, Colorado in July 2002. Shortly thereafter, they moved to Miami, Florida. In April 2004, the minor child was born in Miami, Florida. In October 2004, the Father filed a petition for dissolution of marriage. The Father also filed a motion to compel the child's return to Miami from Grand Junction, Colorado on the ground that the Mother had taken the child without his consent or knowledge. The trial court ordered the Mother to return with the child and remain in Miami during the pendency of the divorce action. Subsequently, the Mother sought to relocate with the child to Grand Junction.
In September 2006, following an evidentiary hearing on the issue of relocation, the trial court entered a final judgment of dissolution of marriage. In its order, the trial court granted the Mother's petition for relocation. The Father's appeal follows.
We review a trial court's order regarding relocation under an abuse of discretion standard. Botterbusch v. Botterbusch, 851 So.2d 903, 904 (Fla. 4th DCA 2003)(citing Dorta-Duque v. Dorta-Duque, 791 So.2d 1148, 1149 (Fla. 3d DCA 2001)). In reviewing the trial court's order, we must determine if there is substantial competent evidence to support the trial court's findings under section 61.13001(7), Florida Statutes (2006).[1]Id. Further, "we do not engage in reweighing the evidence and making value judgments that are appropriate for the trial judge." Id. (citing Flint v. Fortson, 744 So.2d 1217, 1218 (Fla. 4th DCA 1999)).
*734 Florida law does not recognize a presumption in favor of or against a primary residential parent seeking to relocate a child. See § 61.13001(7), Fla. Stat. (2006). Instead, in making a determination as to whether the primary residential parent may relocate with a child, section 61.13001(7) requires a trial court to consider the following factors:
(a) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate with the child and with the nonrelocating parent, other persons, siblings, half-siblings, and other significant persons in the child's life.
(b) The age and developmental stage of the child, the needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
(c) The feasibility of preserving the relationship between the nonrelocating parent or other person and the child through substitute arrangements that take into consideration the logistics of contact, access, visitation, and time-sharing, as well as the financial circumstances of the parties; whether those factors are sufficient to foster a continuing meaningful relationship between the child and the nonrelocating parent or other person; and the likelihood of compliance with the substitute arrangements by the relocating parent once he or she is out of the jurisdiction of the court.
(d) The child's preference, taking into consideration the age and maturity of the child.
(e) Whether the relocation will enhance the general quality of life for both the parent seeking the relocation and the child, including, but not limited to, financial or emotional benefits or educational opportunities.
(f) The reasons of each parent or other person for seeking or opposing the relocation.
(g) The current employment and economic circumstances of each parent or other person and whether or not the proposed relocation is necessary to improve the economic circumstances of the parent or other person seeking relocation of the child.
(h) That the relocation is sought in good faith and the extent to which the objecting parent has fulfilled his or her financial obligations to the parent or other person seeking relocation, including child support, spousal support, and marital property and marital debt obligations.
(i) The career and other opportunities available to the objecting parent or objecting other person if the relocation occurs.
(j) A history of substance abuse or domestic violence as defined in s. 741.28 or which meets the criteria of s. 39.806(1)(d) by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
(k) Any other factor affecting the best interest of the child or as set forth in s. 61.13.
Id.
After a thorough review of the entire record, we find that the trial court abused its discretion in granting the Mother's petition to relocate with the child to Grand Junction. Although the trial court noted each of the factors listed under section 61.13007(7) in its order, the record is devoid of corroborating facts supporting *735 nearly every subsection of the statute. Therefore, we find that the trial court erred in granting the Mother's petition for relocation. See Cecemski v. Cecemski, 954 So.2d 1227 (Fla. 2d DCA 2007)(reversing an order granting relocation because the trial court's findings were not supported by substantial competent evidence).
For example, with respect to the first factor, the trial court noted that the Mother was more involved in caring for the child as an infant and that the Father took a greater role when the child was a little older. The court also observed that the maternal grandparents are not employed while the paternal grandparents work. Without more, these facts do not constitute substantial competent evidence to support a finding that the proposed relocation would improve the nature, quality, extent of involvement, and duration of the child's relationship with the Mother and the Father or others.
Similarly, regarding the second factor, the trial court focused almost exclusively on the fact that the child would be cared for by the maternal grandmother in Colorado as opposed to receiving daycare services in Miami. The trial court did not consider the very young age of the child or any other impact the relocation will have on the child's physical, educational, and emotional development.
In considering the third factor, the trial court found that, despite the relocation, it would be feasible to foster a meaningful relationship between the Father and the child. However, the record clearly shows the hardships and complications of traveling between Miami and Grand Junction. For example, visitation in Grand Junction would require the father to purchase an airline ticket to Denver, which he cannot easily afford given his monthly net income of approximately $1,300. Moreover, the record shows that travel to Grand Junction entails a four-hour flight followed by a four-hour drive from Denver to Grand Junction. This would require the Father to take several days, if not weeks off from work, to facilitate any direct contact with the child. Recently, in Segarra v. Segarra, 947 So.2d 543, 546 (Fla. 3d DCA 2006), we affirmed the trial court's finding that relocation from Miami to Bryceville, Florida, where transportation costs and driving distances posed a burden on both parents, would significantly diminish the excellent relationship between the father and the child. As in Segarra, there is no substantial competent evidence that relocation would foster and preserve any type of meaningful relationship between the Father and the child.
The trial court found the fourth factor, the child's preference, to be inapplicable since we are dealing with a two year old child.
In examining the fifth, sixth, and seventh factors combined, the trial court found that the proposed relocation to Grand Junction would enhance the general quality of life for both the Mother and the child because the Mother would no longer have to work as a store clerk, would spend more time with the child, and would attend nursing school. However, the record reveals that the Mother did not have any job offer in Colorado and had not applied to any nursing school in Grand Junction.[2] Further, there was no evidence whatsoever that the Mother would earn a higher income, would be working less hours, or would be in a better position to spend more time with the child. The trial court relied on the Mother's hopes and expectations, without requiring a showing of either *736 employment prospects or educational enrollment, to support its findings under the foregoing factors. Thus, we find that there was no substantial competent evidence to support the trial court's findings with respect to these factors. See Cecemski, 954 So.2d at 1229 (concluding that there was no substantial competent evidence to support the trial court's finding that the quality of life for the mother and child would improve when the mother testified that she had no jobs lined up or even applied for any jobs in Louisiana); cf. Segarra, 947 So.2d at 546 (determining that there was substantial competent evidence to support the trial court's finding that the quality of life for the mother and child would not improve when the record showed that the mother did not have a job offer in Bryceville, Florida); Botterbusch, 851 So.2d at 904 (concluding that there was substantial competent evidence to support the trial court's finding that the quality of life for the mother and child would improve when the record reflected that the mother accepted a job offer with the United States Customs Department, and would earn more money and work fewer hours in her new position).
Because there was no substantial competent evidence to support relocation under the factors set forth in section 61.13001(7), we find that the trial court abused its discretion in granting the Mother's petition for relocation.
Reversed and remanded.
RAMIREZ J, concurring.
I concur with Judge Cortiñas' opinion for the following reasons:
First, there is no evidence in the record before this Court that the mother has a greater chance to obtain better employment in Colorado. This is an entirely speculative conclusion that the trial court reached which is unsupported by the evidence presented. Second, there is nothing to substantiate the dissent's presumption that the mother has applied or registered in nursing school. Third, the one-year trial period in Miami that the wife had agreed to had long-ago expired when the petition for dissolution of marriage was filed.
Finally, the suggestion that the father may use his child support obligation to pay child support to defray the cost of traveling to Grand Junction is not authorized under any statute or court precedent. Given that child support belongs to the child, the mother's offer to use the money in this manner is not hers to make. See Imami v. Imami, 584 So.2d 596 (Fla. 1st DCA 1991); de Jesus Paris v. Bollon, 503 So.2d 1387, 1388 (Fla. 4th DCA 1987).
SHEPHERD, J., dissenting.
In situations such as this there are no true winners. The evidence in the case reflects that the former husband, Ernesto Muller, and former wife, Melonie Muller, came to Miami for a one-year trial period and agreed to return to Colorado if things did not work out. Shortly after arrival, Melonie learned she was pregnant. Dissolution proceedings followed not long after the birth of the child.[3] Both parents are *737 good and caring parents. The former wife's parents and support structure are in Colorado. The evidence as chronicled in the Final Judgment reflects that, support structure in place, the former wife has a greater chance of bettering herself economically and educationally in Colorado for the support of the minor child in the future. See § 61.13001(7)(e), Fla. Stat. (2006)(stating that one consideration is "[w]hether the relocation will enhance the general quality of life for both the parent seeking the relocation and the child, including but not limited to, financial or emotional benefits or educational opportunities.") (emphasis added). Cf. Segarra v. Segarra, 947 So.2d 543, 546 (Fla. 3d DCA 2006)(approving the denial of a motion for relocation where the trial court found "no evidence that the proposed move would improve the general quality of life for the mother and the child."). The trial court placed heavy reliance on this factor, and conditioned relocation upon the former wife applying for and registering in nursing school before leaving. Having left with the child, I presume she has done so.[4] Finally, the husband has testified that if the child goes, he considers himself employable in Colorado and probably would move there. This statement, made with commendable candor, is consistent with the agreement of the parties when they left Colorado.[5]
The trial court considered all of the above in its determination of former wife's motion to relocate. An opposite result, the one reached by this court, could also have been reached by the trial judge. I am unable to say that the trial court abused its discretion. See Dorta-Duque v. Dorta-Duque, 791 So.2d 1148, 1149 (Fla. 3d DCA 2001); Botterbusch v. Botterbusch, 851 So.2d 903, 904 (Fla. 4th DCA 2003)("An appellate court's standard of review of a trial court's order regarding relocation is whether the trial court abused its discretion. We look to see if there is substantial *738 competent evidence to support the trial court's findings concerning the statutory factors listed in section 61.13(2)(d), Florida Statutes (2002). We do not engage in reweighing the evidence and making the value judgments that are appropriate for the trial judge.")(internal citations omitted). On the record before us, I would leave this matter in the capable hands of the trial court.
NOTES
[1] The trial judge properly applied the 2006 version of the relocation statute as section 11(a) mandates that this version apply "[t]o orders entered before October 1, 2006, if the existing order defining custody, primary residence, or visitation of or with the child does not expressly govern relocation of the child." See § 61.13001(11)(a)(1), Fla. Stat. (2006).
[2] Moreover, in a court pleading, the Mother's counsel informed the court that, during the time she was living in Colorado with the minor child, the Mother had lost her job.
[3] The concurrence asserts that "th[is] one year trial period in Miami that the wife had agreed to had long ago expired when the petition was filed." This is not true. The parties were married on July 7, 2002. The Miami move occurred in July, 2003. The former wife learned she was pregnant within days of arrival. The child was born on April 4, 2004. According to the wife, she told the husband in July, 2004 she wanted to move back to Colorado. Marital problems already existed. The Petition for dissolution was filed on October 4, 2004. The vaunted departure to Colorado, apparently material to the decision of the majority, occurred in the midst of strife on October 22, 2004. If some option period is to be imputed, I see no "expir[ation]." Disturbingly to me, the majority today decrees from afar that, absent a substantial change of circumstances in the future, these two adults and the minor child must henceforth live in Miami when there is scant evidence that either adult has made such a commitment.
[4] I can find no record evidence to support the assertion of the majority at p. 736, that she "ha[s] not applied" to nursing school as required by the trial court's order. E.I. Du Pont De Nemours & Co. v. Native Hammock Nursery, 698 So.2d 267, 270 ("[A]ppellate review is confined to the record on appeal."). If it were so, I would have expected this appeal to have been by now pretermitted by a more efficient motion to enforce judgment below, including return of the child on that basis. See also majority opinion at p. 735 ("Moreover, in a court pleading, the mother's counsel informed the court that, during the time she was living in Colorado with the minor child, the Mother lost her job")(emphasis added). But see Daughtrey v. Daughtrey, 944 So.2d 1145, 1148 (Fla. 2d DCA 2006)("[U]nsworn representations by counsel about factual matters do not have any evidentiary weight in the absence of a stipulation."); State v. Bauman, 425 So.2d 32, 35 n. 3 (Fla. 4th DCA 1982)("We say again that facts are not established for consideration by the trial court or by appellate review when attorneys make representations in their arguments before the trial court. Facts are established by testimony, affidavits and stipulations.").
[5] Alternately, a full measure of substitute visitation was ordered for the former husband here and there, as proposed by the former wife, with adjustments made by the trial judge to compensate for the admitted financial and logistical difficulty. Cf. Segarra, 947 So.2d at 546 (denying relocation where trial court found that mother would be unlikely to comply with substitute visitation and "relocation would end one chapter, yet begin another chapter, of conflict between the parents."). If, as the concurrence suggests, there is a legal infirmity in the agreed arrangement, it can certainly be remedied short of ordering all concerned to live in Miami-Dade County.