# Third District Court of Appeal

## State of Florida

Opinion filed September 21, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2460
Lower Tribunal No. 20-6956
_____

**Joheli Cruz White,**
Appellant,

vs.

**Kevin Lee-Yuk,**
Appellee.

An appeal from a non-final order from the Circuit Court for Miami-Dade County, Samantha Ruiz Cohen, Judge.

Mandel Law Group, P.A., and Roberta G. Mandel, for appellant.

The Joseph Firm, P.A., and Marck K. Joseph, for appellee.

Before FERNANDEZ, C.J., and EMAS, and MILLER, JJ.

MILLER, J.

This appeal presents issues unique to tri-custodial parenting arrangements. Appellant, Joheli Cruz White, the natural mother, challenges an order denying her petition to temporarily relocate to Fort Sill, Oklahoma, with her minor child. The primary issue on appeal is whether appellee, Kevin Lee-Yuk, the putative natural father, has standing to challenge the proposed relocation, despite the fact that his paternity petition has not yet been adjudicated and only the mother and her former wife are identified as the parents of the child on the birth certificate. We affirm.

**BACKGROUND**

In 2014, the mother wed Tiffany Nicole White in North Carolina. Several years later, the couple met the putative father while vacationing in Miami Beach. They discussed conceiving a child, and, although he was married to a man, the putative father agreed to intimately engage with the mother for the purpose of producing an heir.

The child was conceived and born in North Carolina. Upon his birth, the mother identified her wife as the other parent on the birth certificate. However, she gave the child the putative father's surname.

In 2019, the mother and her wife separated. The mother moved to Florida to live with the putative father and his husband. The mother then left

2

the child in the custody of the putative father and his husband while she pursued a four-month-long employment opportunity overseas.

While the mother was working abroad, she agreed to marry a member of the armed forces. After fulfilling her overseas commitment, she traveled to Minnesota to meet her fiancé's family. She remained there for approximately one month before returning to Miami to resume living with the putative father and his husband.

This arrangement continued until the putative father discovered she was pregnant with her fiancé's child. He then required her to move out of the home, leaving her without stable housing or financial means.

The mother filed a petition for dissolution of marriage in the circuit court. Her petition included an allegation that the putative father was the natural biological father of the child, and she sought to amend the birth certificate to reflect that fact. She also petitioned the court to establish a parenting plan and time-sharing schedule with the putative father.

The putative father filed an answer, motion to dismiss, and counterpetition seeking a paternity determination. He further filed a motion to enjoin the mother from removing the child from the jurisdiction. The mother countered with a petition to temporarily relocate with the child to Fort Sill, Oklahoma, to live with her fiancé on a military base.

3

The parties agreed to a temporary time-sharing schedule, and the court convened an evidentiary hearing on the relocation petition.[1]  At the conclusion of the hearing, the court denied the petition on both procedural and substantive grounds.  The court specifically found that the failure to append a written employment offer rendered the petition legally defective, and the mother failed to establish that relocation was in the best interests of the child.  The instant appeal ensued.

## STANDARD OF REVIEW

An appellate court ordinarily reviews the trial court's determination regarding relocation of minor children for abuse of discretion.  See Mata v. Mata, 75 So. 3d 341, 342 (Fla. 3d DCA 2011); Norris v. Heckerman, 972 So. 2d 1098, 1099 (Fla. 1st DCA 2008); Rossman v. Profera, 67 So. 3d 363, 365 (Fla. 4th DCA 2011).  However, "[a] de novo standard of review applies when reviewing whether a party has standing to bring an action."  Boyd v. Wells Fargo Bank, N.A., 143 So. 3d 1128, 1129 (Fla. 4th DCA 2014).

## LEGAL ANALYSIS

The right of a parent to procreate and make decisions regarding the care, custody, and control of his or her natural child is among the most fundamental of constitutionally recognized liberty interests.  See Troxel v.

---

[1] The mother's wife was also granted stipulated time-sharing.

4

Granville, 530 U.S. 57, 65–66 (2000); see also D.M.T. v. T.M.H., 129 So. 3d 320, 334 (Fla. 2013) ("These constitutional rights are recognized by both the Florida Constitution and the United States Constitution."). In relocation litigation, this fundamental interest is balanced against the right to travel. See Fredman v. Fredman, 960 So. 2d 52, 57 (Fla. 2d DCA 2007). Consideration of both rights, along with the polestar consideration of the best interests of the child, "present[s] courts with a unique challenge." Id. at 58.

This case presents an additional layer of complexity. We must first address the threshold issue of the putative father's standing to oppose the proposed temporary relocation.

With the advent of legally sanctioned same-sex marriage and adoption, "[t]he legal parameters and definitions of parents, marriage, and family have undergone major changes." D.M.T., 129 So. 3d at 337. As a result, the legislative framework does not always account for the complex factual scenarios presented in the courts. In particular, tri-custodial arrangements, such as that undertaken by the parties in this case, do not neatly fit within the traditional, dual-parenting paradigm ingrained in many sources of family law.

Florida's parental relocation statute, however, lends itself to an application that expands standing beyond two legally recognized parents.

5

Under section 61.13001, Florida Statutes (2022), a party desiring to relocate fifty or more miles from his or her principal place of residence must obtain an agreement from the other parent "and every other person entitled to access to or time-sharing with the child." § 61.13001(2)(a), Fla. Stat. In the absence of such an agreement, the relocating party must file a petition with the trial court. § 61.13001(3), Fla. Stat. The petition must be served upon "the other parent, and every other person entitled to access to or time-sharing with the child." § 61.13001(3), Fla. Stat.

The statute allows an "objecting party" to file an answer to the petition. The "answer objecting to a proposed relocation must be verified and include the specific factual basis supporting the reasons for seeking a prohibition of the relocation, including a statement of the amount of participation or involvement the objecting party currently has or has had in the life of the child." § 61.13001(5), Fla. Stat.

Implicit in the plain language of these provisions is that all persons served with a petition, which necessarily includes "every other person entitled to access to or time-sharing with the child," is endowed with standing to object to a proposed relocation. § 61.13001(3), Fla. Stat. Had the legislature wished to confer standing to object upon parents only, it could have done so by employing limiting language, and any other interpretation

6

would render nugatory the "every other person" language in all three provisions. See Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 198–99 (Fla. 2007) (quoting Am. Home Assur. Co. v. Plaza Materials Corp., 908 So. 2d 360, 366 (Fla. 2005)) ("We are required to give effect to 'every word, phrase, sentence, and part of the statute, if possible, and words in a statute should not be construed as mere surplusage.' Moreover, 'a basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.'"); Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992) (citations omitted) ("It is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole. Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.").

Here, the trial court has yet to adjudicate the pending paternity petition. Nonetheless, the putative father is a person "entitled to access to or time-sharing with the child" pursuant to a stipulated, court-ratified temporary time-sharing agreement. Thus, although both the mother and her former wife are the only two legally recognized parents on the birth certificate, the putative father has statutory standing to oppose the relocation.

7

The mother further asserts that the trial court abused its discretion in refusing to allow temporary relocation. Within the eighteen-page order on appeal, the trial court found that relocation was not in the best interests of the child. In doing so, the court examined the enumerated statutory factors and all other salient considerations. See § 61.13001(7)(a)–(k), Fla. Stat.

Several findings warrant scrutiny. First, the mother's request to relocate was not premised upon a written job offer. Instead, she planned to move in with her fiancé and search for work upon her arrival in Oklahoma. Because the relevant statute does not require the petitioning party to append a written job offer to the petition unless such an offer constitutes the basis for relocation, the trial court erred in finding the petition legally insufficient.[2] See § 61.13001(3)(a)5., Fla. Stat.

Second, the court expressed doubts as to whether the mother would remain in a long-term relationship with her fiancé. Speculation as to future events is not a basis for denying relocation. See Arthur v. Arthur, 54 So. 3d 454, 459 (Fla. 2010) ("Because trial courts are unable to predict whether a change in any of the statutory factors will occur, the proper review of a

_____

[2] It is undisputed that the fiancé had been employed by the military for a considerable period of time. Thus, the mother did not assert that she wished to move because of a "job *offer* that has been reduced to writing." § 61.13001(3)(a)5., Fla. Stat. (emphasis added).

8

petition for relocation entails a best interests determination *at the time of the final hearing,* i.e. a "present-based" analysis."); Robbins v. Kerns, 308 So. 3d 255, 257 (Fla. 1st DCA 2020) ("Because the trial court erroneously determined the child's future course prematurely, we reverse this portion of the final judgment. We note, as did the supreme court in Arthur, that the parents can revisit this issue at the appropriate time based on then-existing circumstances."); Solomon v. Solomon, 221 So. 3d 652, 655 (Fla. 4th DCA 2017) ("A court may not consider potential future, or even anticipated, events as a substitute for evidence.").

Third, the court found the mother made no showing relocation would be in the best interests of the child. After the putative father demanded the mother leave his home, she was unable to afford a long-term lease.[3] As a result, she was residing in an Airbnb with the child at the time of the hearing. Had her move to Oklahoma been approved, she would have had the opportunity to live in single-family military housing with the child, her fiancé, and her newborn infant. "Absent permission to move with the child, [the

---

[3] It is unclear upon this limited record whether the mother is receiving child support pending a determination as to paternity. See § 742.031(1), Fla. Stat. (2022) ("The court shall issue, upon motion by a party, a temporary order requiring child support pursuant to [section] 61.30 pending an administrative or judicial determination of parentage, if there is clear and convincing evidence of paternity on the basis of genetic tests or other evidence.").

mother] has no choice but to live in that stressful situation or to surrender custody of her son." Card v. Card, 659 So. 2d 1228, 1231 (Fla. 5th DCA 1995). Our courts have recognized that a move that will enhance the living situation of the custodial parent is in the best interests of the child. See id.

Despite these findings, we conclude that the order under review is capable of affirmance. The trial court rendered several additional conclusions, including that a continued relationship with the putative father and his extended family is consistent with best interests because it provides a singularly stabilizing force in the life of the child. See § 61.13001(7)(a), Fla. Stat. Because the record is undeveloped as to whether available visitation alternatives could adequately "foster a continuing meaningful relationship between the child and the [putative father]," this alone presents adequate grounds for affirmance. § 61.13001(7)(c), Fla. Stat.

Accordingly, we affirm the denial of temporary relocation. Our ruling today should not be construed as a basis for foreclosing permanent relocation upon a more developed record.

Affirmed.